Leonard B. Willits, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 69300.    Promulgated July 13, 1937.

*Alfred T. Glenn, Esq.,* for the petitioner.
*John D. Kiley, Esq.,* for the respondent.

**OPINION.**

MILLER: (1) The first question presented is whether additional income was received which was not disclosed by the taxpayer. Upon this issue the determination of the respondent is prima facie correct. *Burnet* v. *Houston*, 283 U. S. 223; *Welsh* v. *Helvering*, 290 U. S. 111;

*Reinecke* v. *Spalding*, 280 U. S. 227, 233; *United States* v. *Anderson*, 269 U. S. 422, 443; *Botany Worsted Mills* v. *United States*, 278 U. S. 282, 289, 290; *Wickwire* v. *Reinecke*, 275 U. S. 101; *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289. The burden was upon the petitioner to overcome the presumption of correctness. This he failed to do. The only evidence submitted in his behalf to support his contention was his income tax returns for the years in dispute and his affirmative answer to his counsel's question: "Do all of these returns show correctly your income, your bank account?" This is obviously insufficient. *W. M. Buchanan*, 20 B. T. A. 210.

On cross-examination petitioner admitted that he prepared income tax returns for C. R. Myers for the years 1920 to 1927, inclusive, and that he prepared income tax returns for Harold A. Brand for the years 1926 and 1927. The undisputed testimony of special agent Lucas shows that petitioner admitted receiving $2,000 from Brand in 1928 in payment for preparing Brand's returns and for making an inventory of Brand's stock. The undisputed testimony of witness Lucas also established that large amounts of money and an automobile were given by Myers, during the years in dispute, ostensibly as gifts to petitioner's mother-in-law. Title to the automobile was taken in the name of petitioner. The payments of money were deposited in the Atlantic City National Bank in the account of "A. M. Smith, G. C. Willits, Trustee." G. C. Willits was petitioner's wife, and she alone had a power of attorney to draw upon the account. These large deposits were, in practically every instance, followed by large withdrawals in favor of petitioner. The entries of deposits and withdrawals of these large amounts in the check book of the account were in many instances made in the handwriting of the petitioner.

Petitioner offered no explanation of these alleged gifts, other than that Myers was a friend of the family. The evidence is sufficient to sustain the respondent's contention that petitioner received undisclosed income during the years in dispute, even apart from the presumption which is indulged in favor of his determination. The statute provides that gross income includes income derived from salaries, wages, or compensation for personal service "of whatever kind and *in whatever form paid*." Revenue Act of 1926, sec. 213 (a); Revenue Act of 1928, sec. 22 (a). It is obvious that income was received by petitioner for services rendered and that the device of an account in the name of his mother-in-law, in which he made deposits and from which he quickly withdrew the same, can not be allowed to defeat his obligation to pay taxes thereon.

(2) Under the circumstances it was proper for respondent to use petitioner's bank deposits as a means of determining his income.

In the case of *Russell C. Mauch*, 35 B. T. A. 617, we sustained the reasonableness of such action, in the absence of other available sources of information. See also *Pincus Brecher*, 27 B. T. A. 1108, and *Axel Holmstrom*, 35 B. T. A. 1092.

(3) Since proof of fraud will automatically carry with it imposition of the 50 percent additional tax,[1] and since it is claimed by the respondent for every year in controversy, the next question is whether petitioner had an intent to evade the payment of income tax for each of the years involved. Upon this point respondent has the burden of proof. Sec. 601, Revenue Act of 1928, amending sec. 907 (a), Revenue Act of 1924; *Budd* v. *Commissioner*, 43 Fed. (2d) 509.

Fraud, as petitioner contends, is not lightly to be found. *G. S. Patterson*, 16 B. T. A. 716; *Henry S. Kerbaugh*, 29 B. T. A. 1014; affd., 74 Fed. (2d) 749; *M. Rea Gano*, 19 B. T. A. 518. We said in the *Gano* case, at p. 532:

To establish fraud by direct proof of intention is seldom possible. Usually it must be gleaned from the several transactions in question and the conduct of the taxpayer relative thereto. Moreover, in assaying evidence to determine the presence or absence of fraud, the scales of justice must dip more heavily than in the ordinary civil case—a mere preponderance is not enough, the evidence of fraud must be clear and convincing.

On the other hand, where the facts reveal a situation unmistakably implying fraudulent intent, it is our duty to find accordingly. We said further in the *Gano* case, at p. 533:

A failure to report for taxation income unquestionably received, such action being predicated on a patently lame and untenable excuse, would seem to permit of no difference of opinion. It evidences a fraudulent purpose.

And we said in *L. Schepp Co.*, 25 B. T. A. 419, 438:

\* \* \* No one reading this record could reasonably escape the belief that the petitioner's president and its secretary were astute and intelligent business men who were fully aware of the facts and implications of their business and reasonably cognizant of the general effect upon the corporation's tax liability of its acts and transactions. There is no room for an extenuating plea of ignorance or inadvertence. What was done was done deliberately and knowingly. \* \* \*

See, also, *Charles J. Delone*, 34 B. T. A. 1139.

Here the petitioner is in no position to plead ignorance of the revenue law or of his duty to make a full return of all his income, for he was internal revenue agent in charge at Newark, New Jersey, from 1921 to 1928, and for three years preceding had been in the Federal revenue service. (Contrast *George L. Rickard*, 15 B. T. A. 316.) Nor does he offer a single reason which would extenuate or palliate the offense.

---

[1] Revenue Act of 1926, sec. 275 (b) ; Revenue Act of 1928, sec. 293 (b).

It is not necessary to review the evidence again. Much of the evidence which was most convincing of fraudulent intent came in the form of admissions by the taxpayer himself, made to special agent Herbert E. Lucas. Lucas testified at the hearing in the presence of the petitioner, without contradiction, rebuttal, or even cross-examination. In several instances it appeared that the taxpayer had at first denied facts indicative of fraudulent intent, but, upon being confronted by evidence accumulated by the special agents, broke down and admitted such facts. The only reasonable conclusion to be drawn from the uncontroverted facts is that petitioner used his mother-in-law, and the bank account in her name, as a mere blind to conceal the receipt of money paid him by Myers and by Brand for his services in preparing their returns. He admitted to the witness Lucas, on being pressed, that a payment of $2,000 made to him by Brand in February 1928 was for this purpose. Between August 24, 1925, and March 26, 1928, a total of $17,000 was paid into this account by Myers, not all of which, it is true, has been traced directly to petitioner's individual uses, but enough of it has been so traced to show the general fraudulent intent of petitioner, during all the years involved, to evade the payment of additional income taxes. The petitioner admitted to Lucas that the greater part of the deposits in Mrs. Smith's account was withdrawn for the benefit of himself, his wife, or his family. No deposit in Mrs. Smith's account appears for the year 1926, nor any withdrawal in that year identified as for petitioner's personal benefit, but, since petitioner was employed by Myers and Brand throughout the entire period, we are of the opinion that that year likewise was affected by the same fraudulent purpose.

There is nothing in the evidence to explain why Myers would have made gifts in this large amount to Mrs. Smith, or to suggest that such payments to her account were bona fide. The witness Lucas testified that petitioner told him that Mrs. Smith was considered by him "as one of the members of the family" and that she was claimed by him on his return as a dependent. The petitioner's returns for all the years in question show that he claimed a deduction for three dependents, but do not show, because not then required, the names or relationships of such dependents. Upon the available evidence, the conclusion that Mrs. Smith was only a screen to mislead the tax authorities is inescapable. The determination of fraud is made in each instance on the peculiar facts of the individual situation. After a full consideration of all the circumstances here attendant, we have no doubt that petitioner had a fraudulent intent to evade payment of income tax in all the years in question, and that his returns in each year reflected that intent by failing to disclose income received.

300

(4) Petitioner contends further that the Commissioner's determination of deficiencies is barred by the statute of limitations.

The deficiency notice was mailed on November 18, 1932. Under this Board's order of October 19, 1936, respondent's motion, to reopen and to file consents to waive the statute, was granted. These consents, duly signed by the petitioner and the Commissioner on November 27, 1931, waive the statute for the years 1926, 1927, and 1928 until December 31, 1932. Sec. 278 (a), Revenue Act of 1926; sec. 506 (a), Revenue Act of 1928. Petitioner challenged the validity of the waivers in his petition as "obtained under duress and/or misrepresentation", but, since this allegation was denied by respondent and no evidence was introduced in support of it at the hearing, we must conclude that the waivers are valid, as they appear to be on their face.

As regards respondent's determination of a deficiency for the year 1925, no waiver was filed, and, except for the filing of a false and fraudulent return with intent to evade tax, the statute of limitations would have run as to that year. Where, however, such a return is filed, and such an intent is present, the statute of limitations does not run. Sec. 278 (a), Revenue Act of 1926. We have held that respondent has fully sustained his burden of proving fraud. Consequently, the statute was not tolled as to the year 1925, the determination of deficiency was properly made, and the 50 percent additional tax was properly assessed.

(5) Petitioner contends that as respondent has the burden of proving fraud—in order to prevent the tolling of the statute of limitations as to the year 1925, and in order to justify the imposition of the 50 percent additional tax as to each year—the burden is shifted so as to require him to prove that deficiencies in tax existed. This contention is without merit. While respondent has the burden of proof of fraud, if he is successful in establishing that fact the presumption of correctness of his determination of deficiencies thereupon immediately revives and must be overcome by positive evidence on the part of the petitioner. The statute of limitations does not shift the burden of proof; it merely raises a bar to the assertion by the respondent of any claim for a deficiency in tax; and, once that bar has been removed by proof of fraud, we are where we were before. Cf. *L. Schepp Co., supra.*

It follows, therefore, for the same reasons given as to the later years, that respondent's determination of the 1925 deficiency is also correct and will be sustained, together with the additional tax of 50 percent assessed on account of fraudulent failure to disclose income.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*