Emory Anderson v. Commissioner.
Anderson v. Commissioner
Docket No. 14384.
United States Tax Court
1948 Tax Ct. Memo LEXIS 92; 7 T.C.M. (CCH) 651; T.C.M. (RIA) 48174; September 15, 1948
*92 During the years 1944 and 1945 petitioner owned a barber shop which was operated by an agent. Petitioner filed returns for those years, purporting to show the net income from such operation. Petitioner was also engaged in gambling, "writing numbers," selling lottery tickets, and other such activities. He included no income from such sources. During the taxable years he expended large sums in the purchase of an automobile, War Bonds, real estate, furniture and securities. He also made a substantial loan, gave lavish presents to his niece and deposited large sums in banks. The Commissioner used the net worth method of computing the petitioner's income. Held, (1) the Commissioner's action in so doing is approved, and (2) his imposition of the statutory fraud penalty is approved. Vivian L. Page, Esq., National Bank of Commerce Bldg., Norfolk, Va., and Walter A. Page, Esq., for the petitioner. E. M. Woolf, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion VAN FOSSAN, Judge: The respondent determined deficiencies of $2,016.37 and $9,600.88 in the petitioner's income tax liability for the years 1944 and 1945, respectively. He also asserted *93 50 per cent fraud penalties of $1,008.19 and $4,800.44 for the same respective years. The issues are: 1. Whether or not Commissioner determined correctly the petitioner's income for the taxable years, and 2. Whether or not he erred in asserting the fraud penalties under the provisions of section 293 (b) of the Internal Revenue Code. Findings of Fact The petitioner is an individual residing in Norfolk, Virginia. Such returns as were filed by him were filed with the collector of internal revenue for the district of Virginia. In 1924 the petitioner was married to his wife, now Irene Anderson. Prior to his marriage the petitioner "played games" in addition to the work that he did from time to time. His wife knew that he was "gaming" when she married him. She worked as a domestic and earned from eight to ten dollars a week. She also earned additional amounts by serving at parties and "day's work." She did her own housework. During the taxable years the family consisted of the petitioner and his wife. The petitioner, a Negro, came to Norfolk in 1920, was elsewhere for a time, and returned in 1924. He has lived there continuously ever since. He has worked *94 as a cleaner, porter, brick yard worker, cotton press operator, longshoreman, stevedore and barber shop operator and has been engaged in "writing numbers," selling lottery tickets, shooting dice, playing poker, and other forms of gambling. The petitioner kept no books at all reflecting his earnings from his gambling business and his other gainful activities. The petitioner, also known by the alias of "Harry Wallace," was arrested 23 times from March 2, 1921, to July 31, 1947, for various offenses such as gambling, assault and battery, disorderly conduct, fighting, larceny, operating and acting as a clearing house for lotteries, possession of number slips and violations of the lottery laws and was given traffic summons for diverse traffic violations. He paid fines in many of the cases. On November 6, 1945, he was fined $500 in the Police Court for violating the city lottery ordinance. In 1940, the petitioner opened a barber shop called "Ideal Barber Shop" and paid cash for the equipment. He devoted no time to that business which was managed by Charles Leonard Wilson, also known as John W. Jones. Wilson kept alleged books purporting to show the income derived from the barber shop. *95 He checked with the petitioner on the operation of the shop every six months or more and paid the profit for such period to the petitioner. The books kept by Wilson purporting to reflect the petitioner's income from the barber shop show insufficient and inadequate data on which to ascertain the petitioner's true income therefrom. The petitioner filed his first income tax return for the year 1941 and reported thereon only his income from the barber shop operation. Subsequent returns were also so limited. He reported incomes thereon of $1,260, $2,478, and $3,231.02 for the years 1941, 1942, and 1943, respectively. The business of writing numbers pays the "writer" 15 per cent on the amount "written." If the holder of the ticket wins, the writer is paid an additional 10 per cent of the winnings. The petitioner kept no records of his gambling transactions including his numbers writing and reported no income therefrom during the taxable years. In 1942, the petitioner purchased a safe which he kept in his bedroom. In the safe he placed various sums of money to be used in his gambling business. The petitioner estimated that the personal expenses of himself and his wife paid during 1944 *96 and 1945 were $3,271.50 and $3,102.59, respectively. He included no amounts expended for medical care, no expenses for trips to New York taken by himself and his wife and no amounts earned by his wife. In addition, the petitioner showed the following expenditures: ADDITIONAL EXPENDITURES OF EMORY ANDERSON - 1944
To purchase of War Bonds, value of $1,500
$1,125.00
To Telegraphic Money Order sent May 23, 1944, to Bessie Williams,
Whiteville, N. C.
15,00
To Purchase of automobile - 1941 Buick from Colonial Chevrolet Cor-
poration -
purchase price
$1,795.00
less trade
650.00
Made payments in the amount of
1,086.00
To repairs to automobile: Total costs
$ 517.25
Less amount paid by insurance company as result of accident
308.60
208.65
Plus $50 under deductible policy
50.00
258.65
To Wilhelminina Luster
10.00
To Collector of Internal Revenue
414.60
Operating automobile
312.00
$3,221.25
ADDITIONAL EXPENDITURES OF EMORY ANDERSON - 1945
To purchase real estate, N.C.
$ 750.00
Telegraphic Money Orders: -
February 1945 to Mrs. Elnora McDaniel, Scotland Neck, N.C.
$ 25.85
July 17, 1945 to Louise Gibson, New York, N. Y.
302.35
November 13, 1945 to Louise Gibson, New York, N. Y.
202.05
November, 1945 to Weisley Goodman, New York, N. Y.
302.35
832.60
To James F. Doyle
100.00
Fines:
677.50
To watch, lady's watch, diamond ring and lavalier
358.50
To I. & M. Reliable Furniture Company, N. Y.
1,032.17
To loan to LEFI PRIVATT
500.00
To payment on automobile
189.00
To Investors Syndicate of America
1,100.00
To Collector of Internal Revenue
862.60
To Division of Motor Vehicles
.50
Operating automobile
312.00
$6,707.27
*97 Inasmuch as the Commissioner had insufficient records to support a proper return of income derived from the barber shop and from the petitioner's gambling operations, he employed the net worth method of computing income for the years of 1944 and 1945, as follows: December 31,
December 31,
December 31,
ASSETS
1943
1944
1945
Cash on hand
$ 4,413.00
Bank Account Balances
$ 3,175.40
13,662.30
Investors Syndicate of America
1,100.00
U.S. Treasury Bonds
$ 375.00
1,500.00
1,500.00
Automobile
650.00
1,925.00
1,925.00
Loan Receivable - Lefi Privatt
500.00
Fixtures & Equipment (Ideal Barber Shop)
790.00
790.00
790.00
Total Assets
$1,815.00
$ 7,390.40
$23,890.30
Total Liabilities
332.17
600.17
490.17
Net Worth
$1,482.83
$ 6,790.23
$23,400.13
Increase in Net Worth
5,307.40
16,609.90
Add Personal Expenditures
4,963.86
8,146.36
Total Income
$10,271.26
$24,756.26
On January 1, 1944, the petitioner had no bank account. During 1944 he deposited $3,600 in banks and withdrew therefrom $424.60, leaving a balance of $3,175.40 on December 31, 1944. During 1945, he deposited $12,450 and withdrew $1,963.10, leaving *98 a balance of $13,662.30 on December 31, 1945. The petitioner reported as net income from the operation of the barber shop, during 1944 and 1945, the sums of $3,373.95 and $2,150.48, respectively. With intent to evade tax, the petitioner failed to report income from his gambling activities and other sources in 1944 and 1945. The deficiencies in income taxes due for the years 1944 and 1945 are due to fraud with intent to evade tax. Opinion The case before us presents a situation which is common with taxpayers who fail to disclose their entire gains and profits. The petitioner has reported what he would like the Government to believe constituted his net income from the operation of the barber shop during the years 1944 and 1945, but the evidence presented at the hearing before the Court in support of his returns is so meager, inadequate and unintelligible that we find it impossible even to approximate his correct net income from that business. The petitioner admits that he has never reported his profits from gambling, "writing numbers," selling lottery tickets and other like activities. He has been engaged in such practices for at least 24 years. His first income tax return, *99 covering the year 1941, was filed in 1942. Due to the complete absence of records properly reflecting petitioner's income and to the inadequate records of the barber shop, the Commissioner was forced to resort to the net worth method of computing the petitioner's income. Under similar circumstances the net worth method has often been approved as a proper means of securing the payment of the statutory tax. Kenney v. Commissioner, 111 Fed. (2d) 374; O'Dwyer v. Commissioner, 110 Fed. (2d) 925. It affords an adequate basis of approximating net income when the Commissioner has been deprived of the necessary supporting data through the negligence, ignorance or deliberate refusal of the taxpayer to fulfill the duties demanded of him by law. The petitioner seeks to prevail on the ground that the respondent had no proper basis for arriving at the petitioner's net worth. However, the Commissioner's determination of deficiencies is prima facie correct and the burden is on the petitioner to prove otherwise. The petitioner first assumes that the profits from his barber shop are not questioned. That assumption is false because the Commissioner found that no adequate *100 records were kept. In their absence, he disregarded the returns filed and computed the petitioner's income, including that from the barber shop, by the net worth method. The petitioner attempts to prove that on January 1, 1944, he had a large amount of cash, between $23,000 and $24,000, which he kept in his bedroom safe. It may be stated at the outset that we do not believe the petitioner's testimony that he possessed almost $24,000 in cash on January 1, 1944. Nor can we believe the testimony of his wife who testified that in July 1943, she had counted between $15,000 and $18,000 in money in the safe. She added that she had not counted it since "because he was going in and out." This testimony is wholly inconsistent with her alleged character as a careful custodian of their joint funds, as to which she stated she "was in charge of every penny he brought in." The testimony of a third witness was equally untrustworthy. For many reasons appearing in the record, we cannot give credence to the petitioner's testimony. A contention is not necessarily proved by the self-serving statements of a petitioner, however positive. Especially is this true if the whole record is shot through with *101 inconsistencies and evidences deliberate violations of law. Testimony takes its character, in large part, from the character of the witness. The frequency of petitioner's arrests and the character of his violations of law do not commend him as a witness worthy of belief. Turning to the taxable years, we have strong and convincing evidence that the petitioner earned large sums of money in addition to the profits from his barber shop. He testified that he received 15 per cent of the face amount of "numbers" he wrote, plus 10 per cent of the amount if his gambling patrons won. He stated that during the taxable years "sometimes they might win $25 or $75." He also sold lottery tickets. Both activities resulted in clear gain. He was asked, "Then your statement [that] you reported all your income in those two returns is not accurate, is that correct?" and replied, "No, sir, I reported the income from my shop." His only attempt to prove that he had no income from gambling in either year was his statement that "I might have broken even in 1944, something like that." Even a casual glance at the petitioner's "additional expenditures" in the taxable years shows that he spent far more than *102 the amounts reported as receipts from his barber shop. See Kenney v. Commissioner, supra. He purchased an automobile, War Bonds, real estate, furniture and securities, made a substantial loan, gave lavish presents to his niece, Louise Gibson, and deposited large sums in banks. In his zeal to show that the Commissioner was wrong in adopting the figure of $1,482.83 as his net worth on January 1, 1944, the petitioner overlooks the fact that such expenditures have a stronger and more persuasive implication that his income was greatly augmented during those years. The petitioner seeks to distinguish such cases as Kenney v. Commissioner, supra; M. Rea Gano, 19 B.T.A. 518; Helvering v. Mitchell, 303 U.S. 391; Leonard B. Willits, 36 B.T.A. 294; and others cited by the respondent, from the case at bar. It is true that the detailed facts and data in these cases are not precisely the same as those we find here. Such is usually the situation. We observe, however, that the petitioner's testimony was singularly in line with the situation suggested in the Kenney case, as a basis of justifying his position. Throughout all of the cited *103 cases there is stressed an underlying necessity imposed upon the taxpayer to deal fairly with his Government and to disclose all transactions which may result in income. This the petitioner has failed to do, as he so frankly admits. The action of the respondent in finding the deficiencies is approved. The issue of fraud requires no extended discussion. The petitioner did not report his income derived from his various gambling activities. We are convinced that he earned, by such means, substantial income in each of the taxable years. He cannot plead ignorance since he filed returns relating to the operation of the barber shop. We have no doubt that the petitioner was fully aware of his duty to report his income from all sources and fraudulently failed to do so. He ignored completely all amounts earned by his wife as a maid and servant. He admitted that he had collected his percentages on the writing of numbers and the winnings of his customers yet he did not include such earnings in his returns. He returned no income from his extensive gambling operations. We have found as a fact that the petitioner, with intent to evade tax, failed to report the income derived from his gambling *104 activities and other sources in 1944 and 1945, and we so hold. The deficiencies in his income taxes for those years are due, in part at least, to fraud and the fraud penalties imposed by the respondent are approved. Decision will be entered for the respondent.