John O. Maxwell v. Commissioner.
Maxwell v. Commissioner
Docket Nos. 15124, 15125.
United States Tax Court
1949 Tax Ct. Memo LEXIS 272; 8 T.C.M. (CCH) 151; T.C.M. (RIA) 49037; February 3, 1949
Isaac I. Bender, Esq., for the petitioner. Charles D. Leist, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These cases, duly consolidated, involve income taxes for the calendar years 1943 and 1944. Deficiencies were determined in the respective amounts of $2,251.21 and $2,266.96. The parties have stipulated as to some items and the effect of such stipulation will be reflected in decisions under Rule 50. This leaves for our consideration the following questions: (a) Whether the petitioner is taxable upon income from certain property, which he was later required by law to return; (b) whether he may deduct certain medical and funeral bills incurred for an aunt; (c) whether deductible travel and *273 business expenses are shown; (d) whether he properly $100deducted as interest paid for 1944; and (e) whether $1,000 net capital loss, in each year, is a proper deduction. We find certain facts to be as stipulated. We incorporate such stipulated facts as are considered necessary to examination of the issues, together with facts found from evidence adduced, in our Findings of Fact The petitioner resides at Robinson, Illinois. His Federal income tax returns (on a cash basis for 1943; basis not shown as to 1944) for the taxable years were filed with the collector for the eighth district of Illinois. The petitioner's aunt, Mrs. Jessie M. Kelsey, then aged 75, was taken ill in early December 1942. She lived alone, and asked the petitioner to look after her. She was ill until her death, on November 25, 1943. On March 19, 1943, she assigned to him certain property, consisting of stocks and bonds, on consideration that he thereafter pay her bills and funeral expenses. He received the securities and transfer certificates were executed and he kept them in his own safety deposit box. Until 1945, when the court made an order on the matter, he regarded these stocks and bonds as his own, *274 maintained that they were, and dealt with them as he did with his other stocks and bonds. Some he cashed and sold. The income therefrom he received and maintained that it was his to do with as he pleased. He made no differentiation between the income from the securities asigned by Mrs. Kelsey and his other property so far as concerned his right to use the income, and used such income for his personal purposes. The income from the assigned property was mingled with his other income, not segregated in any way. Some of the income he used to carry out the terms of the assignment agreement, such as for funeral expenses and medical expenses. Later he returned to her some of the property, common stocks which he had registered in her name; but she asked him to take the income and take care of her. She retained ten rental properties, which were sold later in 1943, but the proceeds were invested in securities registered in her name, and held by her at her death, and passed to her estate, but the income therefrom was received by petitioner. After her death the county court refused to appoint the petitioner as administrator and appointed one Unbehaun. Some time after Mrs. Kelsey's death a suit *275 was filed by the administrator against the petitioner and on May 9, 1945, an order was entered therein, stating, after recitation that evidence had been taken and arguments of counsel considered, in material part in effect, as follows: That the transfers from Jessie M. Kelsey to the petitioner recited that they were in consideration for services rendered and to be rendered, including payment of all future bills and funeral expenses; that the petitioner promised to support her and pay her bills, including hospital bills, medical bills, and funeral expenses; and drew checks on her account, including one for $3,000, which amount petitioner received; that there was a confidential relation between the two parties; that the consideration was far in excess of the services rendered or to be rendered; that the transaction was inequitable and unjust and the transfers were procured by undue influence and were null and void, and that the stocks and bonds transferred (which were in the order listed) were a part of Jessie M. Kelsey's estate and should be delivered to the administrator; that the amounts received by petitioner for stocks and bonds which had been called (which were listed), totaling *276 $30,216.96, together with certain other amounts (not including the $3,000 check above referred to) amounting to $14,199.26, all totaling $44,416.22, and any sums petitioner might thereafter receive as income from the specified stocks and bonds or payments on principal on any stocks and bonds should be paid to the administrator; and that the stocks and bonds should be transferred to him. Petitioner appealed from the order but later by agreement of parties dismissed his appeal and in August 1945 the order was carried out and he turned the property and the income therefrom during the years 1943 and 1944 over to the administrator according to the court order. As an heir of Mrs. Kelsey he received his share. Funeral expenses for Mrs. Jessie M. Kelsey were paid by the petitioner in the amount of $688.95 in 1943. On January 19, 1944, he paid for medical services in the amount of $812.50, and in 1944 paid $56.75 other medical expense. During 1943 he paid other bills for Mrs. Kelsey in the amount of $1,563.59, for drugs, nursing, hospital, and medical service. During 1943 petitioner received $5,095.67 dividends and interest from stocks and bonds referred to in the court order of May 9, 1945; *277 and in 1944 received $4,000 from the same source. During 1943 the petitioner paid Kamp Auto Company a total of $1,847.71 for gas, oil and repairs, with one item of antifreeze, in monthly bills ranging from $119.37 to $189.20. In 1944 he paid Kamp Auto Company a total of $2,010.83 for oil, gas, tires and repairs, again with one item of anti-freeze, in monthly bills ranging from $113.92 to $259.40. No proof was made of any particular amount for any particular class of purchases. The petitioner was in the taxable years president of Kamp Auto Company, and owner of 65 per cent of its stock. His business was that of automobile dealer. He considered the business of Kamp Auto Company his business. During 1943 and 1944 petitioner personally employed a secretary. She was also treasurer and secretary of Kamp Auto Company and she did bookkeeping and secretarial work, took dictation and wrote letters. She received payment during the latter part of 1944 at the rate of $15 a week, for two years. In 1943 petitioner paid an attorney $500 for legal fees, in connection with the estate and transfer of property; also paid $95 for income tax service, and $97 for investment counsel service. During *278 1943 and 1944 petitioner had considerable expense, in his business, for entertainment. Checks for that purpose were paid by the petitioner. The entertainment was in behalf of the Kamp Auto Company. The checks for entertainment totaled $991.82 for 1943 and $1,898.50 for 1944. In 1942 the petitioner in his Federal income tax return reported a long-term capital loss of $3,175, being 50 per cent of $6,350, the difference between $22,050, sale price in 1942 of "Kamp Motor Co." purchased in 1923 for $15,700. One Thousand Dollars ($1,000) thereof was deducted. The petition in Docket No. 15125 for 1943, but involving 1942 because of the tax forgiveness feature, shows that for 1942 the claim of capital loss was disallowed; and the petition for 1943 set up no error in that regard, but alleges that deduction of $1,000 capital loss carry-over from 1942 was for 1942 improperly disallowed. In 1942 petitioner sold for $15,700 157 shares of Kamp Motor stock, some of which cost $100 a share, some costing a different amount. In 1944 petitioner sold for $2,960 "securities," not otherwise designated, costing $4,982 in 1942, with loss of $2,022 and on his return listed 50 per cent thereof, $1,011, *279 as long-term capital loss. In addition $599.25 short-term capital loss, not explained, was listed; and $1,000 capital loss was deducted. The petitioner took a loss on sale of his own securities of $2,022. The petitioner in Docket No. 15125, involving 1943, alleged as error only that the Commissioner erred in disallowing the following deductions: "Traveling and business expense
$1850.20
Capital loss carry over
1000.00
Depreciation, repairs and other ex-
penses on rental property
3030.92
Interest
100.00
Taxes
178.50
Medical expense
2500.00"
In Docket No. 15124, for 1944, the only allegation of error was disallowance of the following deductions: "Rental Expense
$1,773.46
Rental depreciation
1,340.00
Traveling Expense
1,534.10
Interest
5.11
Taxes
391.32
New Business
1,898.58
Capitol Loss
1,000.00" Neither petition set forth any facts relied upon, merely stating that the facts relied upon are "That the above mentioned expenses are allowable under the Internal Revenue Code." On June 7, 1948, by permission granted, each petition was amended only to allege as error the inclusion by the Commissioner in income of $5,095.67, in 1943, *280 and $4,651.67, in 1944, which amounts were alleged to be income "derived from property, title to which was vested in an estate as set forth in an order of the county court of Wabash County of the state of Illinois entered on the 9th day of May 1945, and such income should have been reported as income by the said estate and not by the petitioner." In determining the deficiency in Docket No. 15125 for 1943 the Commissioner in addition to disallowing, as not substantiated, the deduction as alleged in the petition, added to income long-term capital gain of $264.63. As to 1944, in addition to disallowing, as not substantiated, the items of deductions as alleged in the petition, the Commissioner added to income $307.09 for income from interest and dividends not reported. Petitioner's check stub books from February 3, 1942, to December 1, 1945, indicate many items of funeral expense, medical expense, entertainment expense, and expense of legal service, income tax service, and investment service. No check stub appears for $100 for interest paid or for interest in any amount in 1943. Several stubs indicating checks to Crawford County State Bank appear with showing of the expense for which *281 the checks were written. In 1944 a check stub to that bank of $1,003.75 on February 18, 1944, indicates "note and interest." A check stub dated June 5, 1944, to that bank indicates interest, and a check stub on August 29, 1945, to that bank indicates $38.33 interest. Opinion We will consider the questions presented in the order above stated. (a) As to both 1943 and 1944, is the petitioner taxable upon income ($5,095.67 in 1943; $4,000 in 1944) from property transferred to him by his aunt in consideration of his agreement to pay her bills and funeral expenses, in the light of the fact that in 1945, after her death, he was compelled by a court to return such property, and income, to the administrator of the estate? The issue was raised by amendment to the petitions. The answer is in the affirmative, under the facts and so much and such clear authority that it would be superfluous to accumulate citations. North American Oil Consolidated v. Burnet, 286 U.S. 417; National City Bank of N. Y. v. Helvering, 98 Fed. (2d) 93. The petitioner was very positive in his evidence that he treated and claimed the moneys as his own - a strong showing of receipt under *282 claim of right. All of the reasons advanced by the petitioner on brief against income taxation on an annual basis and the taking of loss when sustained have been expressly disposed of in the many cases. We sustain the Commissioner on this issue. (b) May the petitioner deduct medical bills and funeral expenses incurred for his aunt, Mrs. Jessie M. Kelsey, under the agreement to pay such bills in consideration of the transfer of property to him? The funeral expenses are not included in errors assigned as to either 1943 or 1944; therefore, as such, funeral expenses are not before us for consideration. Funeral expenses of $688.95 and medical bills of $1,563.59 were paid in 1943, and medical bills of $812.50 and $56.75 in 1944. The petitioner urges also that if not deductible as funeral expense, the amounts are deductible as business expenses incurred in acquisition of property transferred by his aunt, the income from which is included in his taxable income. The point is not well taken, first, because it is nowhere found in the pleadings, and, second, because it is plain that such expenses, being consideration for acquisition of the property received, are capital expenditures in the acquisition *283 of such property, and not ordinary and necessary business expenses. As to the medical expenses: These involve only 1943, no error being assigned in that respect for 1944 or claim made in the return for that year. For 1943 error is assigned for denial of medical expense of $2,500. Evidence, as to 1943, was adduced showing payment of $1,563.59 for medical, hospital and drug bills, for Jessie M. Kelsey. In our opinion, deduction thereof by the petitioner was properly denied, first, because under the evidence, including the specific terms of the agreement between petitioner and his aunt, such expenses were, like the funeral expenses above considered, capital expenditures to secure the property transferred to the petitioner, and not deductible medical expenses; and, second, within the language of section 23(x) of the Internal Revenue Code, such medical expenses must be those not compensated for by insurance or otherwise, and for these petitioner appears compensated. Though he was by the court order in 1945 required to turn over to the estate of his aunt certain stocks and bonds, listed, and income from other listed securities, nowhere is he required by the order *284 to return the $3,000 which the court order recites that he received by check dated March 31, 1943, from his aunt. On the contrary, the order carefully lists item by item, first the stocks and bonds, which he shall turn over, then lists, by items, the bonds which have been called and requires the proceeds thereof, in the total amount of $30,216.96, to be turned over to the administrator; then lists $14,199.26 additional, from named sources not including the $3,000 check, therefore orders petitioner to pay $44,416.22 to the administrator, plus any sums which he may receive from stocks and bonds or payments of principal thereon after the date of the order. Thus, it is affirmatively shown that petitioner was not by the court order required to pay back the $3,000. Though he testified that he was not allowed to keep anything that he received, he is not only contradicated by the order (and we can not believe that he voluntarily paid more than it required), but he also testified that he returned all cash and securities in his possession "as the court ordered" and did not retain any securities or income therefrom "as stated in the court order." Under these circumstances, it can not be found *285 that, within the intent of section 23(x) of the Code, petitioner was not compensated for the medical expenses he incurred for his aunt. Moreover, in our view, the aunt was not shown to be petitioner's dependent within the meaning of section 23(x) and section 25(b)(3), for it is not shown that one-half of her support was received from him. She retained ten rental properties, and the proceeds thereof, when the properties were sold during 1943, were invested in stocks and bonds, belonged to her, and were registered in her name until her death and passed to her estate. Though the income "went to" petitioner, they belonged to her, and he appears only as her agent in receiving the income. Such a situation by no means demonstrates that she received more than half of her support from the petitioner. We conclude that no error is shown in denial of the deduction for medical expense. (c) Is the petitioner entitled to deduct the $1,850.20, for 1943, as alleged in the petition as deductible travel and business expenses, and, for 1944, $1,898.58 itemized as "new business" and $1,534.10 as travel expense? To support these assignments of error the petitioner offered some records as to "entertainment" *286 in the amount of $991.82 for 1943 and $1,898.58 for 1944. Since the $1,898.58 is a very exact figure and is precisely the same as the deduction for "new business" alleged in the petition for 1944 it is apparent that that is the only business expense included in the issues set by the petition for that year (except the travel item of $1,534.10 hereafter referred to). The item, assuming proper proof of the amount, must be disallowed for the reason that the petitioner testified that it was entertainment on behalf of Kamp Auto Company, a corporation of which he was president and owner of 65 per cent of the stock; and that he considered the corporation's business his business. We can not, under such a record, allow the deduction to him individually. It affirmatively appears that it is not attributable to him as the individual here involved. This eliminates the entire business expense for 1944 and $991.82 of the $1,850.20 "traveling and business expense" for 1943. This leaves $858.38 for 1943 alleged travel and business deductions. The respondent agrees on brief, as to 1943, that $95 for income tax services, and $97 for investment advice, a total of $192, is deductible. This leaves the petitioner *287 to prove, as to 1943, $666.38 under the heading of business expense, as set forth in the petition. The petitioner proved $500 paid to an attorney for legal services in 1943 "in connection with the estate and transfer of property." This can not be allowed, for, the above being all of the evidence before us, it is not shown not to be a capital expenditure, to be considered with the matter of capital acquisition from Jessie M. Kelsey; and, in fact, on such bit of evidence, it affirmatively appears to be such capital expenditure. Perhaps other evidence might have shown the expense to be general and deductible under section 23(a)(1) or (c)(2) but it is not before us. The petitioner also paid Kamp Auto Company $1,847.71 in 1943 and $2,010.83 in 1944 for gas, oil and repairs, including also some items of tires and two indications of antifreeze. These amounts must, under the state of the record, be disallowed as deductions, because no attempt was made to show them to be for business purposes. No proof was made what automobiles were used, or for what purpose. Moreover, the petitioner testified that he was president of Kamp Auto Company but considered it in business for himself. Kamp Auto Company *288 was the payee of the amounts just here considered. No other explanation of his business is given except that he is an "automobile dealer." Obviously such facts do not permit deduction of the amounts last above stated. The petitioner also adduced some testimony as to paying a secretary $15 a week for the period of 1943 and 1944, payment being made late in 1944. Since at least in 1943 the petitioner was on a cash basis, such payment if properly shown does not help prove the business expense for 1943; and as this completes the proof as to "business" expense for that year, we hold that no ordinary and necessary expense of business has been shown, except the $192 conceded as above seen. Considering the $15 a week to the secretary, amounting for two years to $1,560, we note that the payee was secretary both to Kamp Auto Company and the petitioner, being treasurer of the corporation. In answer to the first question as to her occupation she replied that she was secretary to the corporation. Later she said she was treasurer. As such she was used as a witness to testify as to the payments of the $1,847.71 and $2,010.83, above considered, to Kamp Auto Company. Nothing of record indicates or permits *289 any division of her duties, or compensation, between the corporation and petitioner, and taking into consideration petitioner's testimony that he was president of the corporation but "I considered it in business for myself," we see no opportunity to divide the deduction under the principle of Cohan v. Commissioner, 39 Fed. (2d) 540. So far as this record shows, the petitioner's only business was that of the Kamp Auto Company and he would have us disregard corporate entity. He was owner of only 65 per cent of the stock. We discern no reason to disregard the corporate entity. The "business" deductions are disallowed except as above stated. As to travel expense, incorporated in the $1,850.20 item of travel and business expense in the petition for 1943, and $1,534.10 separately alleged in the petition for 1944: No separate proof was made of expense of travel. On brief the petitioner identifies it as to 1943 as the $1,847.71 expense of oil, gas and repairs, above considered. As to 1944, on brief he argues that the travel expense of $1,534.10 is supported by the evidence of $1,898.58 for entertainment, $2,010 automobile expense, and $1,560 for private secretary. Such items *290 on their face prove nothing as to travel. They have, moreover, been above considered. The respondent is sustained as to travel expense. (d) In the petition for 1943 error is alleged in disallowing $100 as interest paid. The only evidence on the item is petitioner's testimony that he borrowed money in 1943 at the Crawford County State Bank and paid interest. He could not remember the amount until shown the petition, showing $100, but then said he paid that amount. There was placed in evidence petitioner's check stub books from February 3, 1942, to December 1, 1945, in order to prove the items of funeral expense, medical expense, entertainment expense, legal service, income tax service, and investment service, above referred to, and check stubs for these items therein appear, with many other checks. These include several to Crawford County State Bank, with showing of the expense for which the checks were written. But none appears for $100 for interest, or for interest in any amount. We note $1,003.75 paid Crawford County State Bank for "note and interest" on February 18, 1944. Likewise a check stub dated June 5, 1944, to that bank indicates interest, and again on August 29, 1945, a *291 check to that bank indicates payment of $38.33 interest. In the absence of any documentary proof under all these circumstances we think the petitioner is not correct in saying $100 interest was paid in 1943. It is too noticeable that the stubs indicating many other payments, to the bank in question and indicating care to show payment of interest to that bank, do now show this payment, for it to be considered proven. The deduction is denied. (e) There remains for consideration petitioner's assignment of error that the Commissioner erred in not allowing deduction of capital net loss carry-over of $1,000 in 1943 and capital loss of $1,000 in 1944. The evidence on the matter is in an unsatisfactory state and the petitioner does not touch the matter on brief and appears to have abandoned it. His proposed findings of fact do however include $1,000 capital loss carry-over for 1943 and $1,000 capital loss for 1944. We will consider the question, though without benefit of brief from petitioner on the point, and will consider 1943 and 1944 separately. As to 1943, the alleged capital loss is carried from 1942. Petitioner's return for 1943 claims the $1,000 net loss from a $1,599.25 net loss *292 carry-over, with no explanation whatever therefor. In his income tax return for 1942 the petitioner claimed a long-term capital loss of $3,175 as one-half of $6,350 loss upon Kamp Motor Company stock purchased for $22,050 in 1923 and sold for $15,700, in 1942. Gains 3of $575.75 on other securities reduced the $3,175 to $2,599.25, but the $575 was not included in income by petitioner. One Thu1sand Dollars was deducted for 1942, but was disallowed by the Commissioner and the $575 was added to income, all as shown by the petition in Docket No. 15125, as to the taxable year 1943 (but involving 1942 because of the tax forgiveness feature), and the petition does not controvert such disallowance of net capital loss for 1942, but assigns error by the Commissioner only in disallowing the $1,000 net loss claimed for 1943, as shown by the return for that year. The petitioner testified that in 1942 157 shares of Kamp Motor stock were sold and that some cost him $100 a share, and as to some the cost price was different, that he could not give the exact figures, and he did not recall the amount received. Though suggestion was made that the witness refresh his recollection, he did not do so. He stated *293 that the returns stated the true facts as to the sale. Though, under all of the circumstances here, we accept the 1942 return as showing the claim for that year and the prices claimed as paid and received, in the absence of any issue taken with the disallowance of the capital loss for that year, and in the condition of the record and uncertainty of testimony, we can not allow carry-over of a part thereof from that year to 1943, which only, as above seen, is placed in issue here. The disallowance for 1942 was a negation of capital loss, even to the extent of $1,000, for that year, and in the absence of some showing of attack thereon, by assignment of error in this matter, $1,000 capital loss can not be considered properly carried over to 1943, where there is no explanation of the Commissioner's disallowance of the capital loss claim as to 1942, and where the testimony is equivocal as to the facts involved. There may have been sound reason for disallowance of capital loss for 1942 and unless this is explained a carry forward of such capital loss to 1943 is not properly shown. The mere return for 1942, nor reading therefrom, nor the statement that it stated the facts (even if such statement *294 were not contradicted by testimony of the petitioner that some of the stock did not cost $100 per share) does not establish the capital loss carry-over claimed. H. B. Moore, 8 B.T.A. 749, 754; Louis Halle, 7 T.C. 245; Leonard B. Willits, 36 B.T.A. 294. Logically this is particularly true where as here the return in question was not prepared by the witness. The respondent is sustained on this point. With reference to $1,000 capital loss claimed in 1944 the situation is somewhat different. It involves, not a carry-over, but "capital loss" under claim, as set forth in the return, of purchase of "securities" (not further designated in the record) in 1942 for $4,982, and sold in 1944 for $2,960, with loss of $2,022 and 50 per cent or $1,011 claimed as long-term capital loss. The return also indicates, without any explanation whatever, claim of $599.25 short-term capital loss, with net capital loss claimed in the amount of $1,000. The petitioner, on trial, testified that he sold some stock and some bonds were called, on which he sustained a loss, that a part of the stocks and bonds were his own, a part were received from Mrs. Kelsey in the assignment, *295 and that he had about $1,400 of $1,500 loss. From the return, without objection, he identified this as the $1,011 loss, and stated that it was on his securities. Though the condition, as to information contained, of the return, the petition and the proof is not what it should be as to accuracy or clearness, we think that a fair conclusion from the entire record indicates that the $1,000 capital loss in 1944 was proved and should be allowed, as to 1944. No objection as to that year was taken to testimony from the return which was introduced by the respondent, and in a broad way the testimony from the return was corroborative of petitioner's testimony, and by way of refreshing memory; and with some hesitation we take the view that the cases last cited do not here apply. We sustain the petitioner on this point as to 1944. Decision will be entered under Rule 50.