Albert G. Wiessner v. Commissioner.
Wiessner v. Commissioner
Docket No. 38807.
United States Tax Court
T.C. Memo 1954-89; 1954 Tax Ct. Memo LEXIS 160; 13 T.C.M. (CCH) 620; T.C.M. (RIA) 54194; June 30, 1954, Filed Louis J. Eberle, Esq., for the petitioner. A. Russell Beazley, Jr., Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of the petitioner and additions to tax for fraud under section 293(b) of the Internal Revenue Code as follows for the indicated years: Additions
Year
Income tax
to tax
1945
$ 7,233.66
$3,616.83
1946
13,411.61
6,705.80
The issues *161 presented are the correctness of the respondent's action in determining that (1) the income reported by the petitioner for the years 1945 and 1946 was understated,(2) the petitioner was liable for additions to tax for fraud for the years 1945 and 1946 under section 293(b) of the Internal Revenue Code, and (3) the periods of limitations for assessment of tax for the years 1945 and 1946 had not expired. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioner resides in Baltimore, Maryland, and filed his Federal income tax returns for 1945 and 1946 with the collector of internal revenue for the district of Maryland at Baltimore. Petitioner had completed five grades in public school when he left school to go to work. His first job was on the Baltimore dry docks. After this job he worked for an engineering company, was a streetcar conductor, worked at another engineering corporation, and in 1935 became employed at Hilde's Steak House. He has worked at Hilde's continuously since 1935. Petitioner's duties at Hilde's consist of managing the restaurant and occasionally tending bar. While working at Hilde's the petitioner *162 was also a bookmaker and engaged in the business of accepting wagers on horse races. At the end of each year the petitioner had his accountant prepare his individual income tax return. He furnished his accountant with the amount of his bank balances at the beginning and end of the year, his statement of income tax withheld on wages (Form W-2), and a statement of his rental income and expenses. The petitioner did not maintain any record of income or losses derived from bookmaking. Petitioner's 1945 income tax return was prepared by his accountant by use of an increase in his net worth, plus additions for personal and living expenses. His 1946 income tax return was prepared by his accountant on a specific item-income basis. The petitioner gave his wife $50 each week to pay the expenses of their home. His present home was purchased about 1925 and was entirely paid for in 1944. The petitioner did not purchase for his wife any jewelry, fur coats or automobiles during 1945 and 1946. Nor did he acquire any real estate in either of those years. During 1945 and 1946 the petitioner maintained a checking account at the First National Bank, Baltimore, Maryland, sometimes hereinafter referred *163 to as First National, and a savings account at the Baltimore National Bank, Baltimore, Maryland, sometimes hereinafter referred to as Baltimore National. As an accommodation to Hilde's customers and to business men in the neighborhood, petitioner cashed checks for them. The petitioner always carried a large amount of cash on his person and would cash the checks and then deposit them in his checking account at First National. One of the businessmen in the neighborhood for whom petitioner cashed checks was Reese E. Nuckols. Nuckols was a refrigerator service man whose shop was located about two blocks from Hilde's. On numerous occasions when Nuckols needed cash for operating expenses or when he was expecting delivery of an express package, he would have the petitioner cash a check for him so he could pay the express charges. During 1945 petitioner cashed 15 checks, totaling $572.28, for Nuckols. Most of them were drawn payable to cash and all were endorsed by the petitioner and deposited in First National. In 1946 the petitioner cashed 24 checks, totaling $1,267, for Nuckols. All of these except one were made payable to cash and all were endorsed by the petitioner and deposited in *164 First National. The amount of the 15 checks deposited in 1945 and that of the 24 checks deposited in 1946 did not represent income to him. During 1945 the petitioner made 41 deposits, totaling $23,057.79, in his checking account at First National. He also made 13 deposits, totaling $770, in his savings account at Baltimore National. Interest of $14.07 was credited to petitioner's savings account in 1945. Petitioner made 69 withdrawals, totaling $22,838.97, from his checking account at First National during 1945. Included in this total were the following withdrawals: 1 for $6,500; 1 for $5,000; 1 for $4,000; 1 for $1,200; and 1 for $1,000. He also withdrew $141.87 from his havings account at Baltimore National. During the year 1946 petitioner made 73 deposits, totaling $40,590.04, in his checking account at First National and made 65 withdrawals, totaling $31,969.51, therefrom. Included in the withdrawals were 2 of $5,000 each; 1 of $4,000; 2 of $2,000 each; and 4 of $1,000 each. Petitioner also made 2 deposits, totaling $109.47, in his savings account at Baltimore National. Interest of $9.25 was credited to the savings account on April 1, 1946. On April 25, 1946, the petitioner *165 withdrew the balance of $2,128.55 in his savings account and closed it. On the following day he deposited the $2,128.55 in his checking account at First National. The amount of this deposit did not constitute income to the petitioner. During 1946 the petitioner redeposited the following amounts, $285.43, $446.63, $10.00, $5.00 and $505.50, representing withdrawals he had made previously on the date of deposit. These amounts were not income to him. During 1946 petitioner also deposited in his account at First National a check for $1,060 which he had received from his insurance company as reimbursement for costs he had paid to have his automobile repaired after an accident. This amount did not constitute income to the petitioner. The deposits made by the petitioner in 1945 and 1946 did not result from the repayment of any loans to the petitioner, from the sale of any of petitioner's assets, or from any gifts received by the petitioner. In his income tax return for 1945, the petitioner reported gross rental income of $3,750 and salary from Hilde's restaurant of $3,880. He did not report any income from his bookmaking activities. The respondent determined that petitioner's gross income *166 for 1945 was $23,841.86. This amount was the total of the deposits credited to petitioner's bank accounts at First National and Baltimore National. Respondent eliminated the gross rent and salary reported by petitioner and determined that he had additional and unreported income in 1945 of $16,211.86. In his income tax return for 1946, the petitioner reported gross rental income of $3,900, salary from Hilde's restaurant of $4,160 and income from commissions of $4,800. Respondent determined that petitioner's gross income for 1946 was $40,693.76. This amount was the total of the deposits credited to petitioner's bank accounts at First National and Baltimore National. Respondent eliminated the gross rents, salary and commissions reported by petitioner. Also, after determining that the $2,128.55 withdrawn by petitioner from Baltimore National and deposited in First National did not represent income to the petitioner, the respondent determined that petitioner had additional and unreported income in 1946 of $25,705.21. The correct additional and unreported income of the petitioner is as follows: Correct additional and unreported
Year income 1945 $15,639.58
1946 22,140.65 The *167 income of the petitioner for 1945 and 1946 was understated by the foregoing respective amounts. A part of the deficiency for each of the years was due to fraud with intent to evade tax. Opinion The petitioner admits he was a bookmaker and that he kept no records of his bookmaking transactions. In the light of those facts, the respondent determined the deficiencies in controversy by using the bank deposits method of computing net income. Under this method it is assumed that all bank deposits represent income unless the petitioner can show otherwise. "* * * deposits in checking accounts are so often made up of income that where * * * that is the fair inference to be drawn from the facts it * * * [is] proper to give it effect." Hague Estate v. Commissioner, 132 Fed. (2d) 775, 777, aff'g 45 B.T.A. 104; Goe v. Commissioner, 198 Fed. (2d) 851, 852. A myriad of authorities support the respondent's action in using bank deposits as a starting point in determining income under the circumstances here existing. Russell C. Mauch, 35 B.T.A. 617; Axle Holmstrom, 35 B.T.A. 1092; Leonard B. Willits, 36 B.T.A. 294; *168 Joseph Calafato, 42 B.T.A. 881; Hague Estate v. Commissioner, supra; Goe v. Commissioner, supra.The burden is on the petitioner to overcome the presumption of correctness attaching to respondent's determination. Leonard B. Willits, supra; Hague Estate v. Commissioner, supra; Joseph V. Moriarty, 18 T.C. 327. Counsel for petitioner contends that petitioner could not have earned the income respondent claims he did because his net worth did not increase in excess of his reported income in 1945 or 1946. The record contains no net worth statement to support this contention. In any event, proof of this conclusion would be merely part of the evidence to be considered in conjunction with the entire record. It would still be incumbent upon petitioner to explain the source of the $23,841.86 deposited in 1945 and the $40,693.76 deposited in 1946. We believe the following succinct statement contained in this Court's opinion in the Hague case is dispositive of petitioner's contention: "The accumulation of wealth during the taxable year, like the possession and use of unexplained cash, is merely evidential, and, where *169 a taxpayer fails to keep proper books of account and is unable to explain the source of accumulated property, such accumulations may be the basis for the determination of income, but the failure to accumulate wealth during the taxable year does not negative the realization or receipt of income, particularly where it is shown as in this case that a taxpayer has expended large sums of money during the taxable year for personal uses and there is a failure on his part to show that the amounts so expended were of a character other than income earned or realized during the year." In the case before us the petitioner had withdrawn from funds deposited in bank $22,838.97 in 1945 and $31,969.31 in 1946 which he did not explain. Further, petitioner contends that his deposits consisted of checks he had cashed as an accommodation to customers and businessmen in the neighborhood. The burden was on petitioner to prove this by competent evidence. Petitioner's attorney stated at the hearing that petitioner had substantially all of his cancelled checks and deposit slips from October 31, 1945 until 1950. However, if that was the situation, they were not offered as evidence nor was a summary thereof *170 proposed as an exhibit. Petitioner's failure to offer them forces us to conclude that if they had been introduced they would not have been helpful to him. Wichita Terminal Elevator Co., 6 T.C. 1158. Petitioner's witness, Reese E. Nuckols, produced his own cancelled checks that petitioner cashed for him, and respondent offered them in evidence. We have reduced the understatement of income as determined by respondent by the amount of the checks petitioner cashed for Nuckols and later deposited. No further evidence was introduced by petitioner to sustain his contention. Clearly, petitioner's contention that all the unexplained deposits are to be classified as deposits of checks cashed by the petitioner is not supported by the record Lastly, petitioner contends that assuming the excess deposits over gross income represent gambling income such income should be reduced because of pay-offs to persons who placed bets with him and won. Section 23(h) of the Internal Revenue Code permits the deduction of losses from wagering transactions to the extent of the gains from such transactions. However, the petitioner has failed to maintain any books or records *171 or to introduce any evidence to substantiate his contention that pay-offs were made to winning bettors. In the absence of evidence showing what amount or amounts, if any, were paid to winning bettors, we conclude that petitioner's contention is without merit and that he is not entitled to any deduction for amounts paid to winning bettors. To the extent of the amounts deposited by petitioner in 1945 and 1946, and not shown to have been other than income, the respondent's determination is sustained. The second issue relates to the respondent's determination that the petitioner was liable under section 293(b) of the Internal Revenue Code for additions to tax for the years in question on account of fraud. Fraud is never presumed. It is the respondent's burden to establish a fraudulent intent by clear and convincing evidence. Frank J. Moore, 37 B.T.A. 378. Fraud must be determined from a complete and careful consideration of the record and testimony offered, by the demeanor of the witnesses, and all events and occurrences incident to the transactions which produced the income in controversy. Wallace H. Petit, 10 T.C. 1253. The petitioner *172 admits he was a bookmaker and derived income from this source. We have found that in 1945 petitioner had income of $15,639.58, in addition to the gross income of $7,630 reported for that year, and that in 1946 he had income of $22,140.65 in addition to the income of $12,860 reported for such year. He has not explained the source of this income. He has also made withdrawals from bank deposits in amounts of $6,500, $5,000, $4,000, $2,000 and $1,000 in the taxable years and has not offered any explanation for the withdrawals. These large omissions of income, together with a complete failure by petitioner to explain the purpose of the bank account withdrawals, are strong evidence of intent to defraud the Government. Arlette Coat Co., 14 T.C. 751. While petitioner completed only five grades of school, he appears to possess substantial business ability and to be cognizant of the income tax law requiring all individuals to report their income and pay the taxes due thereon. This is shown by the fact that he presented his accountant with the figures he thought necessary to prepare his income tax returns. The accountant appears to have simply filled in the tax report form from the *173 figures that petitioner presented to him. From a consideration of the entire record, we have concluded that a part of the deficiency for each year has been shown by clear and convincing evidence to be due to fraud with intent to evade tax. The last issue raised by the pleadings is as to the correctness of the respondent's determination that the periods of limitations for assessment of tax for 1945 and 1946 had not expired. Since the petitioner's tax returns for these years were false and fraudulent and were made with intent to evade tax, the periods of limitations for the assessment of tax for those years had not expired. Section 276(a) of the Internal Revenue Code. Decision will be entered under Rule 50.