*Decisions will be entered under Rule 50.*

MANASSE KARGER, THE SOLE HEIR AND PROPER REPRESENTATIVE OF MARKS KARGER, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MANASSE KARGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

STELLA KARGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 70659, 70661, 71758, 86632, 86633, 86634.

Promulgated July 28, 1938.

210

*Hugh M. Wilkinson, Esq.*, and *Harry Nowalsky, C. P. A.*, for the petitioners.

*Harold Allen, Esq.*, for the respondent.

212

[REDACTED]

OPINION.

Leech: Because of the timely determination of the deficiencies for 1930 and for 1931, the assessment of none of the deficiencies for these years is barred by the statute of limitations. Revenue Act of 1928, secs. 275 (a) and 276 (b). But the deficiencies for 1929 are barred by section 276 (a) of the Revenue Act of 1928 except those determined against taxpayers whose returns for such year were "false or fraudulent * * * with intent to evade tax." As to any of the deficiencies not so barred, the taxpayer, in each, has the burden of establishing error in the respondent's determination of the deficiency. *Welch* v. *Helvering*, 290 U. S. 111; *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289. The propriety of the proposed imposition of each of the fraud penalties raises another fraud issue. That is, whether any part of one or more of the deficiencies is due to fraud with intent to evade tax. Sec. 293 (b), Revenue Act of 1928. See *Charles J. Delone*, 34 B. T. A. 1139.

In neither issue will fraud be presumed. The burden of proof is on the respondent. Revenue Act of 1924, sec. 907 (a), as amended by the Revenue Act of 1928, sec. 601. Its existence must be established by clear and convincing evidence. See *Drawoh, Inc.*, 28 B. T. A. 666.

Both fraud issues are present in connection only with the deficiencies for 1929. The same evidence applies largely to both. Since the fact of fraud of Manasse Karger and Marks Karger, in filing their returns for 1929, has been found, we leave the discussion of both fraud issues until later and proceed to a consideration of the deficiencies. Have the petitioners, or any of them, met that burden as to any part of one or more of the deficiencies?

Manasse Karger and Marks Karger, from 1905 to the time of the death of the latter, were engaged in the gambling business at New Orleans, Louisiana. With the exception of a short period subsequent to 1931, they were equal partners in all their gambling ventures. These consisted of the operation of handbooks on horse races, booking operations at the New Orleans race tracks, and in later years, including those under review, the operation of gambling houses with dice, faro, roulette, and other games. For many years prior to 1924, the petitioner, Manasse Karger, was an officer and stockholder in a tobacco manufacturing business at New Orleans, receiving therefrom a salary, together with dividends upon his stockholdings. He sold his interest in this business in 1924. All three of these taxpayers filed returns for the calendar years 1929, 1930, and 1931 with the collector of internal revenue at New Orleans, Louisiana, reporting net income as follows:

|  | 1929 | 1930 | 1931 |
|---|---|---|---|
| Manasse Karger } Stella Karger } community, ½ each | $5,927.93 | $13,902.00 | $11,039.96 |
| Marks Karger | 6,509.90 | 13,284.00 | 9,678.94 |

Later, in 1932, the petitioner, Manasse Karger, learning that a tax investigation of the operations of certain New Orleans gambling houses was contemplated, called upon the collector of internal revenue at New Orleans and asked that an examination of his returns be made. At the suggestion of the collector Manasse Karger, Stella Karger, and Marks Karger, now deceased, brought their records, consisting of a memorandum book and certain bank statements, to his office. The collector assigned a revenue agent to examine these records. This agent did so and obtained additional information from the petitioners about other property owned by them. As a result of this investigation amended returns were filed by each petitioner for each of the three years, reporting income as follows:

|  | 1929 | 1930 | 1931 |
|---|---|---|---|
| Manasse Karger } Stella Karger } community, ½ each | $11,177.93 | $17,652.00 | $14,364.96 |
| Marks Karger | 11,759.90 | 17,034.00 | 12,803.94 |

The tax computed on all these returns, both original and amended, was paid.

Following this, respondent made another investigation of the tax liability of these three taxpayers and the deficiencies here in dispute were determined.

In his determination of these deficiencies respondent has increased the net income reported in each amended return. He did this by computing the total net income of each taxpayer for each year and deducting therefrom the income already returned upon which the tax had been paid. The computation of the gross income of each taxpayer for each of such years was made by determining the increase in so-called net worth of each petitioner during each of such years, to which amounts were added the aggregate expenditures in those years by each petitioner which were not shown to have been made from capital or reflected in the assets increasing net worth. This method may not reflect income exactly; but it seems to do so with sufficient accuracy to warrant its use here, since no records were kept from which such income could be more exactly determined. We know of no better means available. Certainly, the petitioners have shown us none. The use of this method here is necessary solely because of petitioners' failure to keep such records, the consequences of which they, and not the respondent, must now suffer. Its use is approved here. See Revenue Act of 1928, sec. 54; *Bishoff* v. *Commissioner*, 27 Fed. (2d) 91; *Pottash Bros.*, 12 B. T. A. 190; *Russell C. Mauch*, 35 B. T. A. 617; *McAnelly Hardware Co.*, 9 B. T. A. 361.

The correctness of their respective expenditures and increases in so-called net worth, during the taxable years, is not contested. Nor are the allowable deductions in dispute. Petitioners' position is that respondent erred here, in adding to gross income their stipulated annual expenditures and increases in so-called net worth, because, they allege, those expenditures and so-called net worth increases were made from money which they had earned before and owned at the close of 1928.

The items, as stipulated, supporting the computation of the annual increases in the so-called net worth of the petitioners, are cash in bank, bonds, real estate, and other property, but include no money except that on deposit in bank. The premise of fact upon which the petitioners support their position is that, in addition to the property stipulated as owned by them at the close of 1928, they, Manasse Karger and Marks Karger, deceased, then owned $300,000 in cash, which was then in a safe deposit box rented by them in a New Orleans bank, and that such amount had been reduced to $250,000 by the close of the year 1929, to $220,000 by the end of 1930, and $200,000 by the end of 1931. Clearly, not only the fact of these petitioners'

possession of this cash, but its annual reduction, and in amounts not less than the annual outlays for assets and expenditures reflected in increased so-called net worth, is a necessary factual premise for this position. Therefore, the validity of that position here rests, primarily, upon whether the record does establish these facts.

On this question of fact there is the testimony of two individuals who state that this bank box, on two dates, contained a large sum of money. Neither of these witnesses attempted to fix its amount. One of them, an acquaintance of Manasse Karger, testified that he secured a loan of $20,000 from the latter, in November 1928, and, on that occasion, went with this petitioner to the bank, where the money was taken from the bank box and delivered to the witness in $1,000 bills. He said this money was taken out of an envelope containing other bills and that the figure $200,000 was marked on the envelope.

This witness stated that he had known the petitioner, Manasse Karger, for many years, and that they had often borrowed from each other in the course of gambling operations when either needed funds.

The other witness had been an employee of this petitioner for a number of years in his gambling operations and was in his employ at the time of the hearing. He testified that this petitioner was accustomed to carrying a large amount of money in his bank box. He said he knew this because he had gone with this petitioner on several occasions to the box to secure money necessary in petitioner's gambling operations and that, in July 1929, he accompanied petitioner to the bank and saw him count $190,000 or $192,000 from the box.

The testimony of these two witnesses is of little, if any, value in determining either the amount of cash in this bank box at the close of 1928 or the sum, if any, by which it was reduced during 1928, 1929, or 1930.

In addition to the testimony of these two witnesses is that of the petitioner, Manasse Karger. He testified that his bank box contained the stated amounts of cash on the several dates set out, that this cash belonged to him and his brother and was the so-called "bank roll" used by them in the operation of their gambling business. To accept such self-serving evidence—particularly when its necessity arises, as here, because of this petitioner's unjustified failure to keep proper records of his assets and income upon which to premise a proper income tax return which the law demands—requires, at least, that such evidence be convincing and not discredited. Here, such testimony was vacillating and unconvincing.

At least of passing significance, in considering the credibility of this petitioner on this important point, is his testimony about the

source of the large sum in cash which he says he had in his bank box at the close of 1928. From 1913 to 1916, inclusive, this petitioner filed no returns whatever until after the close of the last of these years when this fact was called to his attention and returns demanded, which were then filed. These returns reported no tax, and a nominal penalty was paid. Following this, returns were filed by this petitioner for each year and income taxes paid as follows:

| | | | | |
|---|---|---|---|---|
| 1917 | $89.84 | 1925 | | $37.21 |
| 1918 | 214.11 | Do | Additional assessment | 14.13 |
| 1919 | 199.50 | Do | Penalty | .71 |
| 1920 | 305.49 | 1926 | | 52.85 |
| 1921 | 83.59 | 1927 | | 44.38 |
| 1922 | 84.49 | 1928 | | No tax |
| 1923 | 109.95 | | | |
| 1924 | 38.00 | | | |
| Do Additional assessment | 237.86 | | | |
| Do Penalty | 11.89 | | | |

Manasse Karger says that the $330,000 in cash, which he testifies he had in their safe deposit box at the close of 1928, was acquired over the period from 1904 to the significant year, here, 1913, in the operation of handbooks and in booking horses at the race tracks. His testimony is that this was used from 1913 to the period now in controversy, in the continuous operation of handbooks and other gambling ventures. But his record of earnings, as reflected in the tax paid over these years, would tend to indicate that he and his brother had realized little or no gain in this gambling, since, during this period to 1924, this petitioner was enjoying a substantial income as an officer and stockholder of the People's Tobacco Co. Of interest in this connection, also, is the testimony of one of the former employees of that company that, between 1919 and 1924, Manasse Karger frequently allowed his credit balances with the company to accumulate until they amounted to substantial sums, and that he made large loans to the company to finance operations in purchasing tobacco. This witness estimates these loans to have been as high as $40,000 at one time. This petitioner, himself, testifies that his loans to the company at times reached a figure of $60,000 or $75,000, and that he sold his stock in the company at a profit in 1924.

The credibility of Manasse Karger is also weakened by another circumstance. In 1933, when the investigation of his income tax returns, resulting in the contested deficiencies, was begun, this petitioner denied information to respondent about his so-called "bank roll." The special agent making the investigation testified to that fact and it was not denied by this petitioner. During the investigation, this petitioner was asked about his property. He accompanied a special agent to the bank for the purpose of inspecting the con-

tents of his bank box and inventorying his securities. This petitioner states that he there took his stocks and bonds from his bank box and submitted them to the agent and assistant for listing but that, at that time, he had money in the box but did not show it to the agent because he thought that only his securities were to be inventoried and did not wish the agent to know about his having the money. This petitioner is intelligent. He must have known that an inventory of property of a taxpayer, under such circumstances, which failed to include the capital used in his business operations, would be wholly inadequate. But this agent testifies that he made an inventory of the contents of the box and that there was no currency in it then. His statement is reasonable, since a complete investigation of the contents of the box and the ascertainment of all the property it contained was the only purpose of his visit.

Without discussing the record further, it is, at least, doubtful whether the presumption of correctness attaching to respondent's disputed determinations of deficiencies, has been overcome. However, comment on other evidence seems appropriate. The petitioner, Manasse Karger, and the decedent, Marks Karger, were separately indicted in the United States District Court for the Eastern District of Louisiana at the term of court for November 1935, for the offense of willfully, knowingly, and feloniously attempting to defeat and evade their income tax liabilities for 1929, 1930, and 1931, by understating the taxable income of each for each such year. The amount of such understatement and consequent liability of each petitioner for each year was set up in a separate count in those indictments. On May 8, 1936, after originally pleading not guilty, each petitioner voluntarily appeared before the court, withdrew his plea, and, after pleading guilty to the entire indictment, was sentenced to and paid a fine of $1,000. One of the conditions then imposed upon these petitioners was that they deposit, in the registry of the court, sums of money to protect the United States in the collection of each of the deficiencies now in question, including that proposed against Stella Karger, together with the penalties added thereto. The decedent, Marks Karger, thereupon deposited the sum of $9,942.39, and the petitioner, Manasse Karger, $8,487.69. These deposits were made with the express reservation to petitioners of their rights to contest the correctness of the tax alleged in the indictment to be due from these three petitioners, and the right of the Government of increasing such deficiencies by proper proof.

The contested deficiencies and penalties involve the very taxes, to be adjusted as stipulated here, to the felonious attempt to evade which the petitioner, Manasse Karger, and decedent, Marks Karger, pleaded guilty. Therefore, such pleas are evidence in these civil proceedings.

They are admissions against interest but as such, as this Board said in *Thomas J. McLaughlin*, 29 B. T. A. 247, "* * * they may be explained and the circumstances given under which they were made, in order to throw light upon the force that should be given to them. *Swan* v. *Philleo*, 190 N. W. 406; *Russ* v. *Good* (*Vt.*), 102 Atl. 481; *Oregon-Washington R. & Nav. Co.*, 78 Ore. 355; 153 Pac. 470."

Manasse Karger explains these pleas by testifying that, although he and his brother were innocent of the criminal charges, they decided to plead guilty if such action would entail only the imposition of fines. He says that he was induced to do this by his brother, who was ill and wished to see the matter closed. He testified that an agreement was made by his attorney with the United States District Attorney that, on a plea of guilty, a fine without imprisonment or with a suspended sentence would be imposed. His attorney corroborates this testimony about that agreement.

We are not impressed by this explanation, particularly when examined in the light of this illuminating record. It is difficult to realize how this petitioner, whose record was unblemished by a conviction or even a charge of law violation, to which fact he testified with obvious pride, would plead guilty to the commission of a serious offense against the criminal laws of his country and pay a substantial fine, merely because he was requested to do so by his innocent brother who had been similarly indicted. The explanation of the petitioner, Manasse Karger, is even more unreasonable in view of the fact that the pleas of guilty were entered against the advice of their attorney and in the face of his opinion that the Government would be unable to convict them.

Whatever may have been the motivating reason that prompted Manasse Karger and Marks Karger to enter pleas of guilty to these indictments, there is nothing, in our judgment, in the explanation for that action in this record which deprives those formal admissions of guilt of their normal effect as clear and convincing evidence of fraud here.

These pleas thus constituted unconditional and unqualified admissions of the decedent, Marks Karger, and the petitioner, Manasse Karger, that all of the income tax returns which each filed for 1929, 1930, and 1931, the years here involved, were false or fraudulent with intent to evade tax. And, although, under the circumstances, such pleas were ineffective as admissions of deficiencies in any particular amounts, we think their reasonable effect may well be to admit the existence of deficiencies in each year in some amount. However, we do not answer that question. In any event, since determinations of deficiencies against each pleader for each of the years 1929, 1930, and 1931 are approved here, such pleas are now similar admissions

that part of each of such deficiencies resulted from the fraud of the respective pleader. Cf. *Summerill Tubing Co.*, 36 B. T. A. 347. And, since the petitioners deny any fraud here, those pleas practically eliminate any remaining weight to which the unsupported testimony of Manasse Karger might be here entitled.

We have, therefore, found that petitioners have failed to establish any error in any of the deficiencies determined by respondent as adjusted under stipulations in the record, except as to the deficiency against Stella Karger for 1929. It is directed that, in the recomputation of those deficiencies under this opinion, effect be given to the stipulations affecting the amounts of those respective deficiencies.

Petitioners argue that, in sustaining such deficiencies, we must find that Manasse Karger and Marks Karger, now deceased, operated their gambling ventures without cash in a substantial amount. That contention, of course, is not sound. We decide, only, that the record here does not establish any error in the contested deficiencies, as adjusted under stipulation. We reach this conclusion because the evidence does not establish that such cash, if Manasse Karger and Marks Karger did have it as contended, was the source of any of their stipulated expenditures or so-called net worth increases, upon the basis of which their gross incomes for the taxable years were computed by respondent.

A consideration of the entire record leads us inevitably to the conclusion, and we have therefore found, that the returns of Manasse Karger and Marks Karger, now deceased, for 1929 were false or fraudulent, with intent to evade tax.

Likewise constrained, we have also found that part of the deficiencies determined against Marks Karger and Manasse Karger for each of the years 1929, 1930, and 1931 was due to fraud with intent to evade tax. But respondent, because of his death before the hearing, claims no fraud penalties against Marks Karger. Accordingly, the 50 percent penalty which respondent has added to each of such deficiencies is sustained, except as to those here redetermined against Manasse Karger as the personal representative of Marks Karger, deceased.

The pleas of guilty to the indictments charging fraudulent evasion of income taxes for those years by the decedent, Marks Karger, and the petitioner, Manasse Karger, together with the imposition of fines and their payment, do not preclude the imposition of the fraud penalties here. *Helvering* v. *Mitchell*, 303 U. S. 391. As to the petitioner, Stella Karger, respondent, on brief, says:

No evidence of individual fraudulent intent on the part of Mrs. Karger, or evidence that she participated in or had knowledge of her husband's financial transactions, is available. The charge of fraud against her therefore is not pressed.

Notwithstanding these facts, in as much as the returns filed by her were false and fraudulent with intent to evade tax, as reporting materially less than half her husband's income in each year, the statute of limitations has not run against assessment and collection of the resulting deficiency for 1929, under the provisions of Section 276 (a), Revenue Act of 1928, (45 Stat. 791, 857).

In view of the statement contained in the first paragraph just quoted and the entire record, in our opinion, the respondent has not sustained his statutory burden of proof of establishing either that the return of the petitioner, Stella Karger, for 1929, was false or fraudulent with intent to evade tax, or that any part of any of the contested deficiencies, against her was due to her fraud. We have so held. It follows that the assessment of any deficiency against her for 1929 is barred (Revenue Act of 1928, sec. 275 (a)), and all of the fraud penalties proposed against her are denied. Revenue Act of 1928, sec. 293 (b). See *Harold B. Franklin*, 34 B. T. A. 927.

Reviewed by the Board.

*Decisions will be entered under Rule 50.*