Frank P. Mineo v. Commissioner. Alfonso Mineo v. Commissioner.
Mineo v. Commissioner
Docket Nos. 24072, 24073.
United States Tax Court
1951 Tax Ct. Memo LEXIS 35; 10 T.C.M. (CCH) 1101; T.C.M. (RIA) 51338; November 23, 1951
*35 1. Respondent's determination of deficiencies in 1942, 1943 and 1944 modified. 2. Fraud penalties for 1943 and 1944, and negligence penalty for 1942, approved. Fraud penalties for 1942 disallowed. Solomon Sandler, Esq., for the petitioners. William C. W. Haynes, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income and victory tax and additions to the tax against Frank P. Mineo in Docket No. 24072, as follows: Failure to
Year
Deficiency
Fraud
File Return
1942
$ 1,222.42
$ 611.21
$305.61
1943
14,832.00
7,416.00
0.
1944
8,664.07
4,332.04
0.
*36 In Docket No. 24073 the respondent determined deficiencies in income and victory tax and additions to the tax against Alfonso Mineo, as follows: Year
Deficiency
Fraud
1942
$ 1,987.77
$ 993.89
1943
16,034.66
8,017.33
1944
8,531.65
4,265.83
The issues presented by these cases are whether or not the petitioners fraudulently understated their income and whether Frank P. Mineo negligently failed to file a return for 1942. The proceedings were consolidated by order of the Court. Findings of Fact The facts stipulated are so found. Frank and Alfonso Mineo are brothers, living in Gloucester, Massachusetts, who were born in Italy and followed their father's trade as fishermen there. They came to the United States in 1923 and 1924 and became fishermen in this country. They have had little or no schooling. Alfonso Mineo, the younger brother, became a naturalized American citizen in 1932. Frank was naturalized in 1942. In 1937 the brothers, together with Antonio Rotundo, purchased the fishing vessel "Alden". Frank and Alfonso bought out Rotundo in 1940 or 1941 and became equal owners. The vessel was operated on a partnership basis in 1942, 1943 and 1944. *37 Frank Mineo remained on the Alden as captain and crew member in the years 1937 through 1941. Alfonso was not on the Alden in these years but captained the vessel "Frank Grinnell", upon which he held a mortgage. In the years in question here, 1942, 1943 and 1944, Alfonso did not participate in any fishing operations on the Alden but he did sign checks against the bank account maintained for the Alden. During part of 1942 Frank was unable to remain on the Alden because of Government restrictions on alien fishermen. After attaining citizenship status in that year, he returned to the boat in November. Frank Mineo continued on the Alden as captain during the next two years. He participated in the sale of fish and was present at the distribution of shares. The Alden engaged in both dragging and seining types of fishing. The latter requires a large seine which is used when a school of mackeral is sighted. In dragging operations a large open bag is lowered to the ocean floor and dragged along the bottom. It is then hauled in and the fish are dumped into the boat. Seining requires a crew of 14 or 15 men, whereas only 9 or 10 crew members are needed for dragging. The net proceeds of a trip, *38 after deducting expenses for oil, ice, fuel and other items, are divided into shares depending on the number of men in the crew. The owner of a boat receives 6 1/2 shares of the proceeds of a seining trip and the same share of dragging proceeds. In both seining and dragging operations crew members receive one share apiece. The captain receives one share as a crew member, plus certain additional shares. Seining commences late in March and continues until December when dragging is started. In 1942 the Alden was used chiefly for seining although some dragging operations were carried out. Its registered owner was Alfonso Mineo. It was stipulated that sales of fish caught by the Alden in 1942 amounted to $69,906.61 and the expenses for food, ice and oil totaled $10,000. Crew wages, as reported for social security purposes, amounted to $29,390.88. In 1942 the average number of crew members per trip over the entire year was 11 men. In this year the Alden had a number of captains - John Fidello, Joe Russo, Concetto Scuderi and Frank Mineo. Several seines were lost by the Alden during the year. Partnership expenses in operating the Alden in 1942 were $14,481.69. No partnership return was *39 filed in this year. Alfonso Mineo filed an income tax return for 1942 reporting wages of $3,700 and $100 deductible expenses, but Frank did not file a return. Alfonso's return listed $15,385.44 as total receipts from the business of operating the Alden. After deductions the net loss reported for 1942 was $5,578.38. The owners of the boat sometimes received six shares, a half share being paid to crew members for extra work. In 1942 Frank and Alfonso each received one share from the boat and the remaining four shares were deposited in the bank. The social security returns indicate that Frank Mineo received $200 in wages in 1942 from the Alden. In 1943 the Alden's total sale of fish aggregated $146,009.79, with fishing expenses of $10,000. Crew shares reported on social security forms totaled $52,121. The average crew in 1943 was 13 men. The Alden went dragging in 1943 for approximately a month. The petitioner's operating expenses totaled $20,800.60. A partnership return was filed disclosing gross receipts of $24,672 and a net loss of $4,159.05. Frank Mineo filed an income tax return for 1943 in which he reported wages of one share from the Alden at $3,692, the amount disclosed by *40 the social security work sheet. Alfonso filed a return for 1943 disclosing wages of $6,585 from the Frank Grinnell. In 1943 Alfonso received part of the Alden's proceeds. For 1944 total fishing receipts for the Alden were stipuated to be $106,362.24, while food, ice and oil cost $10,000 during the year. The social security returns for 1944 reveal that $38,417 was paid in crew shares. The average crew in 1944 was 14 men. Partnership operating expenses for 1944 totaled $14,250.82. The partnership return for 1944 listed gross receipts as $16,800 and net income as $2,341.88. Alfonso reported wages of $3,764 from the Frank Grinnell and $1,170.94 as partnership proceeds for 1944. Frank filed a return listing $2,800 in wages from the Alden as disclosed by the social security forms. He reported $1,170.94 as partnership proceeds. Alfonso received a check in the amount of $3,500 from the Alden's proceeds. In December, 1947, Alfonso Mineo was convicted upon his plea of guilty of evasion of income and victory taxes under 26 U.S.C. 145 (b)[1] for 1943 and 1944, and of filing false income tax returns for 1944 under 18 U.S.C. 80. [2] Frank Mineo was *41 convicted on his plea of guilty in December, 1947, of evasion of taxes in 1943 and 1944, and of filing a false income tax return for 1944 under the same statutes. Each brother received a fine of $1,000 and imprisonment for two months. *42 Alfonso Mineo was married, and had six children. His wife did not work but one son was employed during this period. Alfonso, his wife and children deposited over $15,000 in local banks during 1942, 1943 and 1944. In the years in question, Frank Mineo was married and had five children. His wife did not work during this period although one daughter did. Bank balances for Frank and his family increased by more than $8,000 during the three years. Both Frank and Alfonso made payments of principal and interest on mortgages on their houses in these years. The social security returns and withholding tax returns for the Alden crew members were prepared by an accountant from a book kept on the boat. The record of the amount of wages paid to crew members on the Alden during these periods did not accurately reflect the actual wages paid. The record of crew shares paid was purposely understated to reduce the amount withheld for income tax purposes. No other records were used in the computation of wages paid or the amounts withheld. The deficiencies due from Frank and Alfonso Mineo for the years 1943 and 1944 are due to fraud with intent to evade tax. Opinion VAN FOSSAN, Judge: The *43 respondent has determined deficiencies against the petitioners for three consecutive years because of the omission of income received by them. [3] He also seeks to impose fraud and negligence penalties under sections 291 and 293 (b) of the Internal Revenue Code. [4] The petitioners contest both the deficiencies and the penalties. The dispute as to the deficiencies is centered about the amount of wages paid to the Alden crew members. The petitioners' income and the tax thereon can be determined with reasonable accuracy if the crew wages paid from the Alden's total proceeds are known. *44 The petitioners argue that 21 1/2 crew shares should be employed in the determination of the amount of each share. This computation presupposes that 15 crew members were carried on the vessel throughout the year in question. The respondent objects to the petitioners' use of a 15-man crew because there is no proof of exactly how many men went on each trip. In his computation, the respondent employs the figures stated in the social security returns. These figures, however, are inaccurate because of the cheating engaged in to avoid withholding taxes. Moreover, acceptance of the social security wages would attribute to the owners of the boat over half of the net proceeds of the sales in each year, whereas the owners' shares could only amount to 6 1/2 shares of a minimum total of 14 1/2 when dragging and 20 1/2 when seining. The social security returns disclose, however, the number of crew members and the average full-time crew for the year. In 1942 total sales of fish brought $69,906.61. The net proceeds, after deduction of the $10,000 fishing expenses, were $59,906.61. The average number of crew members for the entire year was 11 men. The net proceeds would thus be divided into 17 *45 1/2 equal shares of $3,423.23 each. The boat's 6 1/2 shares would amount to $22,251, and the crew's 11 shares, approximately $37,655. The partnership had expenses of $14,481.69 which leaves the brothers with a net profit of $7,769.31 to be divided equally between them. Alfonso's income for 1942 on this basis is $3,600 in wages and $3,884.65 from the Alden, for a gross income of $7,484.65. Frank Mineo received at least $200 as crew wages in 1942. This amount, together with his partnership share of $3,884.65, gives him a gross income of $4,084.65 for 1942. By this means of computation the petitioners' income for 1943 and 1944 can similarly be determined. Net sales of $136,009.79 in 1943, when divided into 19 1/2 shares of $6,975 each, give the boat owners a share of $45,337. After deduction of partnership expenses of $20,800.60, a net profit of $24,536.40 is reached. Alfonso's income for 1943 would thus be $12,268.20 in partnership proceeds and $6,585 in wages from the Frank Grinnell, or $18,853.20. Frank Mineo's income would be $19,243.20 upon the addition of his crew share of $6,975 to his partnership share of $12,268.20. In 1944 gross sales aggregated $106,362.24, and after *46 deduction of expenses the net receipts were $96,362.24. Division of net receipts into 20 1/2 shares for crew and owner produces shares of $4,700.60 and a boat share of $30,553.90. Partnership expenses of $14,250.82 reduce the proceeds to a net of $16,303.08. Alfonso's share of $8,151.54, together with his wages of $3,764, gives him an income of $11,915.54 in 1944. Frank Mineo's income of $12,852.14 is arrived at by combining his crew share of $4,700.60 and his partnership share of $8,151.54. Upon the evidence, we conclude that the petitioners have borne the burden of disproving the amount of deficiencies determined by the Commissioner to the extent indicated. As can be seen from these computations, each brother seriously understated his income from the Alden in all three years. Frank Mineo's failure to file a return in 1942 is clearly due to negligence and the 25 per cent addition is properly justified. The imposition of the fraud penalties is supported on two grounds. Frank and Alfonso Mineo pleaded guilty to informations charging them with attempts to evade income taxes for 1943 and 1944 and of filing false returns for 1944. The pleas of guilty to the attempts to evade the identical *47 taxes and the filing of false returns in these years are admissions against interest which are clear and convincing evidence of fraud here. Manasse Karger, 38 B.T.A. 209. Such admissions may be explained and surrounding circumstances may be shown to cast light upon the effect to be given them but in the absence of such explanation or illumination the pleas of guilty are sufficient to support respondent's burden. Thomas J. McLaughlin, 29 B.T.A. 247. Alfonso testified that their lawyer told the brothers they would not go to jail if they pleaded guilty. This explanation, however, merely demonstrates a desire to escape imprisonment as part of the punishment. It does not explain why two persons, if innocent, would be willing to accept whatever penalty was forthcoming, for they knew a plea of guilty entailed some punishment. There is no other evidence to lessen the weight of this fact. It is enough to sustain the charge of fraud. George Caldwell, 47 B.T.A. 168, modified, 135 Fed. (2d) 488. Examination of the evidence and testimony brings us to a similar conclusion of the existence of fraud. In 1943 and 1944 Frank Mineo worked on the *48 Alden. He participated in the sale of fish and division of the proceeds. His testimony demonstrates that he knew that the records kept of his wages were false. Yet he reported his income for tax purposes upon this false basis. In both these years Frank Mineo failed to keep accurate records of the profits of the Alden. He admits that there was a profit for 1943 but the partnership and individual returns show a loss for that year. The boat's profit for 1944 was grossly understated despite the facts that Frank was aboard the vessel during that year. In 1942 Frank did not go fishing until November. His crew wages, as reported on the social security return, were $200. Alfonso, who was not aboard the Alden in 1942, reported a loss from its operation on his individual return. We have held above that Frank Mineo's failure to file a return for 1942 constituted negligence, but the Commissioner has not proved that he acted fraudulently in failing to report his proper income. Frank believed there was a loss for the operation of the boat which had had at least four captains during the year and had lost several seines. Unlike the years 1943 and 1944, Frank Mineo did not have the firsthand opportunity *49 to know whether the Alden was making or losing money. Upon the evidence, we hold the respondent's determination of fraud in 1942 against Frank to be erroneous. Alfonso Mineo did not participate in the Alden's operations in any of the years in question. He did, however, file an individual return for 1942 which reported a loss of more than $5,000 from its operations. Like his brother, Alfonso did not have firsthand knowledge of the Alden's financial position. He was not aboard the vessel. He did not participate in its sales. Upon all the facts, we hold that Alfonso did not act fraudulently in making his 1942 return. Alfonso admits that the Alden made money in 1943, yet the partnership return disclosed a loss, and no income from the partnership is included in his individual return for that year. Alfonso testified that in 1944 he received a check of $3,500 from the Alden. This amount was not reported in his return because his 1944 return discloses income of $1,170.94 from the Alden. At the hearing he stated that he knew in 1943 and 1944 that the returns were not correct. Upon all the evidence and testimony, we conclude that the respondent's determination of fraud on the part of Alfonso *50 and Frank Mineo for 1943 and 1944 is correct. We uphold the Commissioner's determination of the negligence penalty against Frank Mineo for 1942 but disallow the fraud penalty determined against each brother for that year. The fraud and negligence penalties will be fixed on the basis of the deficiencies determined by the recomputation carried out under Rule 50. Decisions will be entered under Rule 50. Footnotes
1. 26 U.S.C. 145. Penalties - * * *
(b) Failure to collect and pay over tax, or attempt to defeat or evade tax. Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution. ↩
2. 18 U.S.C. 80. Presenting false claims. Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, any claim upon or against the Government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, knowing such claim to be false, fictitious, or fraudulent; or whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry in any matter within the jurisdiction of any department or agency of the United States or of any corporation in which the United States of America is a stockholder, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.↩
3. SEC. 22. GROSS INCOME. (a) General Definition. - "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * ↩
4. SEC. 291. FAILURE TO FILE RETURN. In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. * * * SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612 (d) (2).↩